# IN THE UNITED STATES DISTRICT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| The Kroger Co., | ) | Case No. 3:07 CV 01619 |
| | ) | |
| Plaintiff, | ) | Judge Katz |
| | ) | |
| -vs- | ) | **ANSWER, COUNTERCLAIM AND** |
| | ) | **CROSS-CLAIMS OF DEFENDANTS** |
| Louisville Title Agency for N.W. Ohio, Inc., | ) | **LOUISVILLE TITLE AGENCY FOR** |
| et al., | ) | **N.W. OHIO, INC., GLORIA LEVIN** |
| | ) | **AND ALAN SCHALL** |
| Defendants. | ) | |

\*   \*   \*

## ANSWER

For their Answer to the Complaint herein, Defendants Louisville Title Agency for N.W. Ohio, Inc., Gloria Levin and Alan Schall (collectively "Defendants") hereby state as follows:

1.      Defendants admit the allegations contained in paragraph 1 of the Complaint.

2.      Defendants admit the allegations contained in paragraph 2 of the Complaint.

3.      Defendants admit the allegations contained in paragraph 3 of the Complaint.

4.      Defendants admit the allegations contained in paragraph 4 of the Complaint.

5.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the Complaint.

6.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint.

7.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint.

8.     Defendants admit the allegations contained in paragraph 8 of the Complaint.

9.     Defendants admit the allegations contained in paragraph 9 of the Complaint assuming that the "land" is the "Property."

10.     Defendants admit the allegations contained in paragraph 10 of the Complaint.

11.     Defendants admit the allegations contained in the first sentence of paragraph 11 of the Complaint. Defendants admit the allegations of the second sentence of paragraph 11 of the Complaint to the extent that it is alleged that Kroger is entitled to remain a tenant under the terms and subject to the conditions set forth in the Lease and Lease Agreement attached to the Complaint as "Exhibits A and B." Defendants deny the allegations contained in paragraph 11 of the Complaint to the extent that they are inconsistent with the foregoing.

12.     Defendants admit the allegations contained in paragraph 12 of the Complaint to the extent that they are consistent with the Non-Disturbance and Attornment Agreement attached to the Complaint as Exhibit D and refer to the said Exhibit D for the contents thereof. To the extent that the allegations contained in the said paragraph 12 are inconsistent with or do not fully set forth the terms of the said Exhibit D, the allegations of said paragraph are denied.

13.     Defendants admit the allegations contained in paragraph 13 of the Complaint.

14.     Defendants admit the allegations contained in paragraph 14 of the Complaint.

15.     Defendants admit the allegations contained in paragraph 15 of the Complaint.

16.     Defendants deny the allegations contained in paragraph 16 of the Complaint.

17.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint.

18.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint.

19.     Defendants admit the allegations contained in paragraph 19 of the Complaint.

20.     In response to the allegations contained in paragraph 20 of the Complaint, Defendants admit that the notice referred to in the said paragraph 20 was intended to advise Plaintiff that the Land Lease would terminate on June 9, 2007 and to direct Plaintiff to pay its monthly rent and to perform its other lease obligations to the Property Owners, as that term is defined at paragraph 13 of the Complaint, for a prorated period during June 2007 and, thereafter, during the period from July 2007 until the expiration of Plaintiff's lease. To the extent the allegations contained in the said paragraph 20 are inconsistent with the foregoing, they are denied.

21.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint.

22.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint.

23.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint.

24.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint.

25.     In response to the allegations contained in paragraph 25 of the Complaint, Defendants admit that counsel for Kroger notified counsel for the Property Owners that Kroger would be willing to deposit the disputed rent amount into an escrow account at Kroger's counsel's firm but deny that the Property Owners' counsel failed to respond to that proposal. Defendants are

without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the said paragraph 25.

26.     In response to the allegations contained in paragraph 26 of the Complaint, Defendants admit that, commencing on June 1, 2007 Kroger, owes a specific monetary obligation to the Property Owners, as that term is defined at paragraph 13 of the Complaint, but deny that Kroger owes any continuing obligation to the Landlord under the terms of the Lease, the Lease Agreement and/or the Lease Modification as described in paragraphs 10 – 11 of the Complaint.

27.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint.

28.     Defendants admit the allegations contained in paragraph 28 of the Complaint.

29.     Defendants admit the allegations contained in paragraph 29 of the Complaint.

30.     In response to the allegations incorporated by reference into paragraph 30 of the Complaint, Defendants hereby incorporate by reference the respective responsive allegations contained in paragraphs 1 – 29 as set forth above.

31.     Defendants admit the allegations contained in paragraph 31 of the Complaint.

32.     In response to the allegations contained in paragraph 32 of the Complaint, Defendants admit that one or more of the parties described collectively as the "Landlord" in paragraph 17 of the Complaint claims the rent proceeds on the basis that it alleges it is a tenant under a land lease and remains a tenant under said lease, but deny that such claim is true or accurate.

33.     Defendants admit the allegations contained in paragraph 33 of the Complaint.

34.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the Complaint.

35.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of the Complaint.

36.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of the Complaint.

37.     In response to the allegations incorporated by reference into paragraph 37 of the Complaint, Defendants hereby incorporate by reference the respective responsive allegations in paragraphs 1 – 36 as set forth above.

38.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the Complaint.

39.     Defendants Louisville Title and Levin (collectively referred to as the "Property Owners") are the successors in interest to Mr. and Mrs. Schall and have an ownership interest in the Property which is the subject matter of the Complaint. In addition, the Property Owners are the successors in interest to the Lessor's interest in the April 19, 1977 Lease and Lease Agreement which Plaintiff entered into with Fremont Korners Associates a/k/a Fremont Korners Shopping Center and any successors thereto. Therefore, Property Owners are entitled to enforce all rights of the lessor under the said Lease and Lease Agreement and all obligations owed by Plaintiff under said Lease and Lease Agreement are owed to Property Owners. No other Defendant herein, with the exception of Schall who holds a power of attorney for the Property Owners and is authorized to act on their behalf, has any interest whatsoever in or related to the Property which is the subject matter of the Complaint.

WHEREFORE, Defendants respectfully demand that the Court accept jurisdiction of this interpleader action, enter judgment upholding Defendants' claims as set forth above, reject all other Defendants' claims against the property which is the subject matter of the Complaint and distribute all funds held by the Court in connection with this action to Defendants. Defendants also

pray that the Court order such other and further relief for the benefit of Defendants, including attorneys' fees and the costs of this action, as it shall deem just and equitable.

## COUNTERCLAIM AND CROSS-CLAIMS OF DEFENDANTS LOUISVILLE TITLE AGENCY, LEVIN AND SCHALL AGAINST PLAINTIFF AND ALL OTHER DEFENDANTS

Defendants and Counterclaim and Cross-Claim Plaintiffs, for their Counterclaim against Plaintiff and Cross-Claims against all other Defendants herein, hereby state as follows:

### DECLARATORY JUDGMENT

1.      Counter and Cross-Claim Plaintiffs hereby incorporate by reference the allegations admitted and/or contained in paragraphs 1 through 38 of their Answer as set forth above.

2.      As of June 1977, Isadore and Ida Schall held fee simple title to the land described on Exhibit A hereto, which description is incorporated herein as if fully set forth (hereinafter the "Property").

3.      During June 1977, Isadore and Ida Schall entered into a land lease with Fremont Korners Associates a/k/a Fremont Korners Shopping Center ("Fremont") (hereinafter the "Land Lease") whereby Fremont leased the land from Mr. and Mrs. Schall as the Schalls' ground tenant.  A true fair and accurate copy of the Land Lease is attached hereto and incorporated by reference herein as Exhibit B.

4.      On April 19, 1977 Plaintiff herein, the Kroger Co. ("Kroger"), entered into a Lease (a copy of which is attached as "Exhibit A" to the Complaint and is hereby incorporated by reference) and Lease Agreement (a copy of which is also attached to the Complaint as "Exhibit B" and is hereby incorporated by reference) with Fremont (collectively the "Kroger Lease"), whereby Kroger agreed to sublease the property from Fremont under certain terms and conditions.  Kroger is and remains a sub-tenant on the Property.

5.     On January 22, 1979, Mr. and Mrs. Schall executed a Non-Disturbance and Attornment Agreement (a copy of which is attached to the Complaint as "Exhibit D" and is hereby incorporated by reference) in Kroger's favor whereby the Schalls agreed that, so long as Kroger was not in default, regardless of the status of the ground tenant, Kroger's lease would be valid and enforceable.

6.     Counterclaim and Cross-Claim Plaintiff Louisville Title and Levin (collectively the "Property Owners") are the successors in interest to Mr. and Mrs. Schall and hold title to the Property.  Counterclaim and Cross-Claim Plaintiff Schall holds a limited power of attorney for the Property Owners and is authorized to act on their behalf.

7.     Upon information and belief, Realty Dealership Company, First Morgan Investment, LLC and F.G. Realty Corp. (collectively the "Alleged Land Lessees") claim to have succeeded to the interests of the Lessee under the Land Lease.

8.     Under the terms of the Land Lease, in order to extend the term of the Lessee's interest in the Property, notice of exercise of the second renewal option was required to have been given by Lessee at least six months prior to June 10, 2007.

9.     In fact, no notice of renewal as required by the terms of the Land Lease was sent by the Alleged Land Lessees or received by Property Owners within the time permitted by the terms of the Land Lease.  Therefore, as of midnight on June 9, 2007, any interest held by the Alleged Land Lessees terminated as a matter of law and the Alleged Land Lessees have no further interest whatsoever in the Property.

10.    In addition, and independently, the Land Lease has terminated due to material breaches of its terms by the Lessee and its alleged successors.

11. On or about May 10, 2007, Property Owners gave notice to the Alleged Land Lessees that the Land Lease would expire by its terms on midnight on June 9, 2007 and notified them to vacate the premises upon expiration of the Land Lease. A copy of the said Notice is attached to the Complaint herein as Exhibit E and is incorporated by reference herein.

12. Accordingly, all right, title and interest to the Property is vested in the Property Owners subject to the terms of the Non-Disturbance and Attornment Agreement and Property Owners have succeeded to all rights and obligations as Lessor under the Kroger Lease and otherwise to all rights as the owner in fee simple of the Property.

13. An actual controversy has arisen and now exists between the parties herein relating to their respective rights and duties under the Land Lease, the Kroger Lease and otherwise. It is a matter of immediate importance to Property Owners that this controversy be promptly determined. Property Owners have no other adequate remedy at law.

WHEREFORE, Counterclaim and Cross-Claim Plaintiffs respectfully demand that this Court enter judgment herein declaring the rights, status and other legal relations between the parties herein as follows:

1. That the Land Lease has, by its terms, expired and is of no further force or effect between Alleged Land Lessors and any other party to these proceedings;

2. That the Lessee under the Land Lease and the Alleged Land Lessees have no right, title and interest to the Property whatsoever; and

3. That subsequent to June 9, 2007, all lease obligations owed by Kroger pursuant to the Kroger Lease are owed to the Property Owners and not to any other party to this action and that, pursuant to the Non-Disturbance and Attornment Agreement dated January 22, 1979, Kroger

owes all of its obligations under the Kroger Lease, including its monthly lease obligations to Property Owners; and

      4.      Granting such other and further relief, including reasonable attorneys' fees incurred herein and the costs of this action, as the Court shall deem just and equitable.

Respectfully submitted,

/s/ Jeffrey S. Creamer
Jeffrey S. Creamer (0012539)
Nathan A. Hall (0077014)
Barton L. Wagenman (0000655)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, Ohio 43624
Telephone: (419) 241-9000
Facsimile: (419) 241-6894
E-mail: jcreamer@slk-law.com
       bwagenman@slk-law.com
       nhall@slk-law.com

Attorneys for Defendants, Louisville Title Agency for N.W. Ohio, Inc., Gloria Levin and Alan Schall

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing **Answer, Counterclaim and Cross-Claim of Defendants Gloria Levin and Alan Schall** was filed electronically this 27th day of July, 2007. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jeffrey S. Creamer
Jeffrey S. Creamer
Nathan A. Hall
Barton L. Wagenman
SHUMAKER, LOOP & KENDRICK, LLP

Attorneys for Defendants, Louisville Title Agency for N.W. Ohio, Inc., Gloria Levin and Alan Schall

## LAND LEASE

THIS LEASE made and entered into as of the _10ᵗʰ_
day of June, 1977, by and between ISADORE SCHALL and IDA
SCHALL, his wife ("Landlord"), of Sylvania, Ohio and FREMONT
KORNERS ASSOCIATES, an Ohio General Partnership to be formed
with OWEN LAVELLE and PATRICIA LAVELLE as General Partners
("Tenant"),

WITNESS THAT:

1.  Premises

Landlord, for and in consideration of the rents
to be paid and the covenants and agreements to be kept and
performed by Tenant, does hereby lease to Tenant the premises
situated in the City of Fremont, Sandusky County, State of
Ohio, as are more particularly described on Exhibit "A" at-
tached hereto and made a part hereof. The property covered
by such legal description is hereinafter referred to as the
"demised premises".

2.  Term

A.  Initial Term

Tenant shall have and hold the demised premises
and property with the rights, privileges and appurtenances
hereto belonging, or in anywise appertaining thereto, for and



- 1 -

during a term commencing upon the date of execution hereof and continuing for a period of twenty-five (25) years, unless sooner terminated under the terms and conditions of this Lease. The phrase "lease term" as used in this Lease shall be the term of this Lease.

### B. Options to Extend

Tenant shall have the right to extend the term of this Lease for five (5) successive five (5) year periods upon written notice to Landlord of such effect given at least six (6) months prior to the initial expiration date of this Lease or any extension period hereof. In the event of any such extension, the Lease shall be extended upon the terms and conditions as applied during the initial Term.

### 3. Rent

A. Tenant hereby hires said demised premises for the term herein mentioned and, in consideration of the peaceful use and enjoyment of the demised premises and the performance of all of the terms and provisions thereof to be performed by the Landlord, does hereby covenant and agree to pay Landlord, as rental for said premises, the sum of Fifteen thousand five hundred twenty-two dollars ($15,522.00) per annum, payable in equal monthly installments of One thousand two hundred ninety-three dollars and fifty cents ($1,293.50) each, on the first day of each month throughout the term of the Lease, as same may be extended, in addition to twenty-five percent (25%) of any and all percentage

rentals when and if paid in accordance with the provisions
of the Leases attached hereto and made a part hereof as
Exhibits "B" and "C".

B.    Said rental payments shall commence upon occu-
pancy by the Kroger Company and Revco Drugs of their lease-
hold premises, prior thereto, commencing upon the first day
of the third (3rd) month after construction of the improve-
ments on the subject premises begins, the tenant shall pay
the Landlord the sum of Six hundred forty-six dollars and
seventy-five cents ($646.75) per month until occupancy as
aforesaid.

### 4.    Taxes and Insurance

A.    As additional rent, Tenant agrees, commencing
upon the execution hereof, to pay to the public authorities
charged with the collection thereof, promptly as the same
become due and payable, all taxes, general and special,
assessments and other public charges made upon or assessed
against the demised premises and any buildings, structures
or improvements now or hereafter located thereon, or arising
in respect of the occupancy, use or possession of the demised
premises and which are assessed and are or become a lien
during the continuance of this Lease.  Tenant agrees to ex-
hibit to Landlord, on demand, receipts evidencing payment of
all such taxes, assessments or public charges so payable by

Tenant. All such taxes for the first and last years of the term hereof shall be equitably prorated between the parties.

B. Tenant shall not be obligated, however, to pay any income tax, profits tax, excise tax or other tax or charge which may be payable by or chargeable to Landlord under any present or future law of the United States or the State in which the demised premises are located, or imposed by any political taxing subdivision thereof or any governmental agency, upon or with respect to the rent recieved by Landlord under this Lease or upon the rights of Landlord to receive such rents or to do business.

C. Tenant shall not be obligated to pay any inheritance, transfer, estate, succession or other similar tax or charge which may be payable under any present or future law of the United States or the said State or imposed by any political taxing subdivision thereof or by any other governmental agency, by reason of the devolution, succession, transfer, passing by inheritance, devise, acquisition or becoming effective of the right to possession and enjoyment of all or a part of the estate of Landlord in said premises, whether by descent, deed, testamentary provision, trust deed, gift, mortgage or otherwise.

D. Tenant shall not be required to pay, discharge or remove any tax assessment, tax lien, forfeiture or other imposition or charge upon or against said premises or any

part thereof or the improvements at any time situated thereon so long as Tenant shall, in good faith, contest the same or the validity thereof by appropriate legal proceedings which shall operate to prevent the collection of the tax, assessment, forfeiture, lien or imposition so contested and to prevent the sale of said premises or any part thereof to satisfy the same. Pending any such legal proceedings, Landlord shall not have the right to pay, remove or discharge the tax, assessment, forfeiture, lien or imposition thereby contested, provided Tenant shall, prior to the date such tax or imposition is due and payable, give such reasonable security as may be demanded by Landlord to insure such payments and prevent any sale or forfeiture, or lien, including any penalties and interest charges thereon imposed by law.

E.  Any proceedings for contesting the validity or amount of taxes, assessments or othe r public charges or to recover back any tax, assessment or other imposition paid by Tenant may be brought by Tenant in the name of Landlord or in the name of Tenant, or both, as Tenant may deem advisable.

F.  If Tenant shall default in the payment of any taxes, assessments or public charges above required to be paid by Tenant, or fail to maintain the required security for any part thereof being contested, Landlord shall have the right to pay the same together with any penalties and interest, in which event the amount so paid by Landlord shall

be paid as additional rent by Tenant, on demand, together with interest thereon at the prime rate then in effect for short-term commercial borrowing at the Toledo Trust Company, Toledo, Ohio from the date of payment by Landlord.

G.    Any taxes paid by Tenant in advance covering a period extending beyond the date of expiration of the term of this Lease shall be prorated between Tenant and Landlord.


5.    Use

The demised premises may be used by Tenant for any lawful purpose.


6.    Right to Make Improvements

Landlord agrees that Tenant may, from time to time and at any time during the term hereof, in its sole discretion and at its own cost and expense, construct upon all, or any part, of the demised premises new buildings and improvements upon the following conditions:

A.    all improvements and new buildings shall be of a good and substantial character and such as will not tend to decrease the value of the land hereby demised.

B.    That Tenant shall pay for all labor performed and materials furnished in or about the erection and construction of such buildings and improvements and keep the demised premises and buildings and improvements thereon at all times free and clear of all liens for labor or materials furnished in and about such erection and construction, and will defend, at its own cost and expense, each and every

lien asserted or claim filed against said premises and/or the buildings or improvements thereon, or any part thereof, for labor claimed to have been so performed or material claimed to have been so furnished and promptly pay each and every judgment made or given against said premises, or any part thereof, or the buildings and/or improvements thereon, and/or against Landlord or Tenant, on account of any such lien and indemnify and save harmless the Landlord, their successors and assigns, from all and every claim and action on account of such claim, lien or judgment, or any of Landlord's agents, employees or contractors, in or about such erection, construction or employment.

C.  Landlord agrees to enter into a contract for demolition of the existing structures on the subject premises at said Landlord's sole expense in accordance with the contract attached hereto and made a part hereof as Exhibit "D".

D.  All such demolition, construction and the completed buildings shall comply with all laws and ordinances relating thereto.


7.  Tenant's Right to Mortgage

Tenant, in its sole discretion, shall have the right, from time to time, to borrow money and grant as security therefor a mortgage on the demised premises upon such terms and conditions satisfactory to Tenant, etc., for both interim and end financing, and Landlord agrees to execute all such mortgage(s) (both interim and end financing) subject to the following:

( i)     Such loan(s) are to be secured from a recognized financial institution during the course of construction of such building or buildings or other improvements, if any, by a construction loan mortgage(s) and after completion of construction, or if tere be no construction, by a first mortgage(s), which mortgage(s) are to be a first lien on the demised premises and the building or buildings and improvements to be constructed thereon, the form of any such mortgage to be as required by the mortgagee(s).

( ii)     That Landlord shall not be personally liable for the payment of any sums whatsoever, and evidence to that effect shall be stated clearly in any instrument required to be executed by Landlord.

(iii)     It is further understood and agreed that Landlord has not agreed and shall not be required to subordinate its fee title or leasehold interest for any indebtedness except first mortgage financing and interim financing for the construction of permanent improvements on the demised premises, whether such improvements be constructed immediately or at some future date. As the improvements are constructed upon the demised premises, Landlord shall join with Tenant in the execution of a mortgage(s) upon such improvements.

( iv)     If the demised premises, or any portion thereof, are subleased to a tenant, the rent payable under such sublease shall be of sufficient amount to pay the mortgage payments, the rental payments to Landlord herein and the real estate taxes covering the property under the sublease.

( v)     Loan documents shall provide that in the event of Tenant's default in performance or obligations denoted in such loan documents, notice of such default shall be given by mortgagee to Landlord shall have not less than fifteen (15) days after receipt of such notice to remedy such default without acceleration of payments.

( vi)     Any sums advanced by Landlord to cure defaults of Tenant shall be repayable to Landlord on demand, together with interest at the maximum legal rate.

(vii)     In the event Landlord's title is subordinated to the lien of any indebtedness obtained by Tenant then under no circumstances shall the amount of such indebtedness exceed the sum of One million one hundred fifty thousand dollars ($1,150,000.00) or in the case of refinancing an amount by which the rents payable under the Kroger lease through the expiration of its term shall be sufficient to pay such mortgage payments, the rental payments to Landlord hereunder and the real estate taxes covering the property.

(viii)     Tenant shall have the right, from time to time, to refinance the demised premises and the improvements thereon, if any, so long as Tenant complies with the foregoing provisions, and to finance its propsed development on the demised premises through the issuance, by the applicable governmental authority, of industrial revenue bonds which do not require Landlord to convey the fee title of the premises to any governmental author- ity; the Landlord agrees to execute any and all documents necessary to obtain same.

## 8.   Alterations

With respect to any buildings, structures or improvements at any time constructed or erected by Tenant on the demised premises, Tenant shall:

( i)     Have the right, at its own expense, during the term hereof, to remodel, alter, add to or modify structurally or otherwise the buildings and imprvements situated on the demised premises; provided, however, that before such remodeling, alteration, addi- tion or modification be made, Tenant complies with all those requirements set forth in Article 6A., B. and D. above.

( ii)     At all times during the term of this Lease, when Landlord's title is subordinated to

any lien, maintain fire and extended coverage insurance on all buildings and improvements erected and constructed upon the demised premises in insurance companies of generally recognized responsibility and credit and authorized to do business in the State of Michigan and/or Ohio, at Tenant's option, in the full insurable value thereof and in an amount equal to but not less than one hundred percent (100%) of the full replacement value when there is no lien, with a loss-payable clause naming as beneficiaries Tenant, Landlord and any interest mortgagee as their interest may appear. Certificates of such policies of insurance shall be given to Landlord. In the event of loss or damage by fire or other casualty, Tenant (providing funds are available from the insurance proceeds) shall repair such damage and restore the building so damaged so that the same is in as good condition as prior to such damage or destruction, providing same does not occur during the last three (3) years of the term or any extension thereof. Subject to the rights of the mortgagee, if any, all sums arising by reason of loss under said insurance policies shall be available to Tenant for the reconstruction or repairing, as the case may be, of any building or buildings injured or destroyed by fire or other insured risks. Should any amount of such insurance proceeds remain after completion and payment

for the work performed, such amount, if Tenant be not in default under the terms of this Lease, shall be retained by and belong to Tenant.

(iii)    Tenant agrees that all buildings, structures and improvements shall comply with all laws and ordinances relating thereto.

( iv)    In the event of loss or damage by fire or other casualty and Tenant shall not repair such damage and restore the building so damaged so that the same is in as good a condition as prior to such damage or destruction then Tenant shall, at the option of Landlord, demolish such building and remove all debris so as to restore the land in the same condition as at the commencement of construction.

9.    Repair and Maintenance

With respect to any buildings, structures or improvements constructed on the demised premises by Tenant, Tenant covenants and agrees that it will, at its own expense, during the continuance of this Lease, keep such buildings, structures and improvements in good repair, and at the expiration of the term, or any renewal or extension thereof, yield and deliver up the same in good condition, reasonable wear and use thereof and damage by the elements or other cause or casualty excepted.

## 10. Tenant to Indemnify - Insurance

Tenant agrees to indemnify and hold harmless the Landlord from any liability for damages to any person or property in, on or about said demised premises from any cause whatsoever, and Tenant will procure and keep in effect during the term hereof public liability and property damage insurance for the benefit of Landlord in the sum of Five hundred thousand dollars ($500,000.00) for damages resulting to one person, and One million dollars ($1,000,000.00) for damage resulting from one casualty, and Three hundred thousand dollars ($300,000.00) property damage. Tenant shall deliver said policies, or in lieu thereof, certificates evidencing said policies, to Landlord, and upon Tenant's failure to do so, Landlord may, at its option, obtain such insurance, and the cost thereof shall be paid as additional rent due and payable upon the next ensuing rent day. Notwithstanding anything herein to the contrary, Landlord shall be named as joint insureds on all policies.

## 11. Gas, Water, Heat, Electricity

Tenant will pay all charges, if any, made against said demised premises for goas, water, heat and electricity during the continuance of this Lease, as the same shall become due.

## 12. Eminent Domain

If the whole or any substantial part of the premises hereby leased shall be taken by any public authority

under the power of eminent domain, then the term of this Lease shall cease on the part so taken from the day the possession of that part shall be required for any public purpose, and the rent shall be paid up to that day, and from that day Tenant shall have the right to either cancel this Lease and declare the same null and void or to continue in the possession of the remainder of the same under the terms herein provided, except that the rent shall be reduced in proportion to the amount of the premises taken. If such taking shall occur prior to the time Tenant has erected or constructed any building(s) or structure(s) upon the demised premises, then all damages awarded therefor shall belong to and be the property of Landlord, whether such damges shall be awarded as compensation for diminution in value to the leasehold or to the fee of the premises herein leased; provided, however, that Landlord shall not be entitled to any portion of the award made to Tenant for loss of business. If such taking occurs after Tenant has erected or constructed on the demised premises any building(s) or structure(s), then out of any damages awarded for such taking, Landlord shall pay to Tenant a fair and just portion thereof. Such fair and just portion of the award so to be paid by Landlord to Tenant shall be determined by agreement of the parties, and in the event the parties for any reason shall fail, neglect or be unable to agree within thirty (30) days after such award as become final, then the determination thereof shall be made by three

arbitrators selected, one by the Landlord, one by the Tenant, and the third by the two selected by the Landlord and the Tenant, the determination of the majority of whom shall be final and binding upon Landlord and Tenant.

### 13. Bankruptcy and Insolvency

In the event the estate created hereby shall be taken in execution or by other process of law, or if Tenant shall be adjudicated insolvent or bankrupt, or if a receiver or trustee of the property of Tenant shall be appointed by reason of Tenant's property for the benefit of creditors, then and in any of such events, Landlord may, at Landlord's option, terminate this Lease and all rights of Tenant hereunder by giving to Tenant notice in writing of the election of Landlord to so terminate; provided, however, if:

( i)    The order of court creating any of the disabilities enumerated in this article be not final by reason of pendency of the proceedings or appeal from such order; or

( ii)    Tenant shall become a debtor seeking corporate reorganization under the terms of Chapter X of the present National Bankruptcy Act or any other similar bankruptcy act, or any other similar provisions of any present or future act,

then Landlord shall not have the right to terminate and cancel this Lease by reason of any of the disabilities enumerated

herein, so long as Tenant pays to Landlord all amounts payable by Tenant to Landlord hereunder in full as and when the same become due and payable.

### 14. Default

In the event default shall be made by Tenant in the payment of rent upon the day it becomes due and payable and such default continues for a period of thirty (30) days after receipt by Tenant of written notice thereof, or if default shall be made or suffered by Tenant in any of the other covenants and conditions of this Lease required to be kept or performed by tenant (other than payment of rent) and Tenant fails to cure such default or defaults within sixty (60) days after receipt by Tenant of written notice from Landlord specifying the default or defaults complained of, then and in any such event or events, and whenever and as often as such failure of default shall occur, it shall and may be lawful for Landlord, at Landlord's election, at any time thereafter to re-enter into and repossess the premises and the building(s) and improvements situated thereon, and every part thereof, and Tenant and each and every other occupant to remove and put out. In the event that Tenant's default (other than non-payment of rent) is not cured within said sixty (60) day period by reason of labor troubles, war, government regulations, unavailability of materials or any condition beyond

Tenant's reasonable control, the time for curing such default shall be extended accordingly.

### 15. Assignment

Tenant shall have the right to assign and sublet, from time to time, the demised premises or any part thereof provided, however, no such assignment or subletting shall relieve the partnership nor its general partners, OWEN LAVELLE and PATRICIA LAVELLE, from their personal obligation and responsibilities hereunder.

### 16. Attornment

If Tenant enters into a sublease of the demised premises and upon request by Tenant Landlord agrees to execute, at any time and from time to time, such agreements between Landlord hereunder as Owner, Tenant hereunder as Landlord and any or all Tenant's subtenants as Tenant(s), covering portions or all of the demised premises, by which agreement(s) Landlord (Owner) will agree that in the event of the termination for any reason whatsoever of this Lease, if the subleasee is not then in default of its sublease, (a) such sublease(s) shall remain in full force and effect in accordance with its terms as a Direct Lease with Landlord herein as Landlord, and such subtenant as Tenant, and such Tenant shall attorn to and pay the rent to such Landlord; (b) that he will perform and comply with all of the terms, covenants and conditions of the sublease which are binding upon the Landlord named in such sublease.

## 17.   Tenant's First Right of Refusal

If Landlord, at any time during the term of this Lease, receives one or more bona fide offers from third parties to purchase the demised premises and if such offer is acceptable to Landlord, then Landlord shall notify Tenant in wirting, together with a copy of such offer, and Tenant shall have thirty (30) days from and after reciept of such notice from Landlord in which to elect to purchase the property for the consideration and on the terms and conditions contained in the bona fide offer.  If Tenant does not elect to purchase such property and Landlord thereafter sells the property, the purchaser shall take the property subject to and burdended with all of the terms and conditions of this Lease, including the terms of this aritcle.

## 18.   Tenant's Personal Liability

In the event Landlord's title is subordinated to the lien of any indebtedness obtained by Tenant then Tenant and its general partners, OWEN LAVELLE and PATRICIA LAVELLE, shall be personally liable hereunder.  In the event Landlord's title shall not be subordinated to the lien of any indebtedness obtained by Tenant then in such event the covenants contained in this Lease to be performed by Tenant shall not be personally binding on the partnership or on the general partners, OWEN LAVELLE and PATRICIA LAVELLE, but instead said covenants shall be for the purpose of binding only the Tenant's leasehold

interest in the demised premises and in such event, Tenant and its general partners shall not have any personal liability with respect to any of the terms or covenants contained in this lease.

### 19. Waiver of Subrogation

Each party hereto does hereby remise, release and discharge the other party hereto and any officer, agent, employee or representative of such party of and from any liability whatsoever hereafter arising from loss, damage or injury caused by fire or other casualty for which insurance (permitting waiver of liability and containing a waiver of subrogation) is carried by the injured party at the time of such loss, damage or injury to the extent of any recovery by the injured party under such insurance.

### 20. Ownership of Leasehold Improvements

Upon the termination of this Lease (except if Tenant purchases the demised premises), whether by lapse of time or otherwise, all buildings and improvements then and at such time upon said demised premises shall belong to Landlord.

### 21. Compliance with Laws

Tenant shall, at its own expense, under penalty of forefeiture and damages, promptly comply with all lawful

laws, orders, regulations or ordinances of all municipal, county and state authorities affecting the premises hereby leased, and the cleanliness, safety, occupation and use of the same.

22. Right to Re-Entry

In the event that Landlord shall, during the period covered by this Lease, obtain possession of said premises by re-entry, summary proceedings or otherwise, Tenant hereby agrees to pay Landlord the expense incurred in obtaining possession of said premises and also all expenses and commissions which may be paid in and about the letting of same.

23. Holding Over

It is hereby agreed that in the event of Tenant herein holding over after the termination of this Lease, thereafter the tenancy shall be from month to month in the absence of a written agreement to the contrary.

24. Cumulative Rights

It is agreed that each and every of the rights, remedies and benefits provided by this Lease shall be cumulative and shall not be exclusive of any other of said rights, remedies and benefits, or of any other rights, remedies and benefits allowed by law.

### 25. Waivers

One or more waivers of any covenant or condition by Landlord shall not be construed as a waiver of a further breach of the same covenant or condition.

### 26. Interpretation

This Lease shall be interpreted in accordance with the laws of the State of Ohio.

### 27. Notices

All notices provided for in the Lease shall be sent:

To Landlord:

Isadore and Ida Schall, 4003 Newcastle, Sylvania, Ohio 43560.

To Tenant:

Fremont Korners Associates, c/o Owen Lavelle, Lavelle & Co., Inc., P.O. Box 449, Bloomfield Hills, Michigan 48013.

### 28. Real Estate Commissions

Tenant agrees to pay Herbert E. Lawrie dba Homestead Realty a commission for all services rendered in connection with this Lease and all zoning matters pertaining thereto in the total amount of Twenty-four thousand dollars ($24,000.00) to be paid in five (5) equal annual payments of Four thousand eight hundred dollars ($4,800.00) each with

with the first installment to be paid upon execution of this Lease and the remaining four (4) installments to be paid on each subsequent anniversary of that date, provided however, that in the event the property be sold prior to payment of the full commission, the unpaid balance will be paid at the time of such sale. Tenant shall hold Landlord harmless with respect to the payment of the foregoing commission.

29. <u>Quiet Enjoyment</u>

Landlord covenants that Tenant, on payment of all the aforesaid installments and performing all the covenants aforesaid, shall and may peacefully and quietly have, hold and enjoy the said demised premises for the term aforesaid.

30. <u>Short Form Lease</u>

Landlord and Tenant agree to execute, at the time of execution of this Lease or upon request by either party, a short form lease for recording purposes, setting forth the legal description of the property, the term of this Lease and reference to the option to renew the Lease.

31. <u>Successors</u>

The covenants, conditions and agreements of this Lease shall be binding upon and shall inure to the benefit of the heirs, representatives, successors and assigns of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed duplicates of this Agreement each of which shall constitute an original on the day and year set forth above.

Witnesses:

_Rita M. Skunda_

_Rosanne Kowalski_

_Phyllis L. Russ_

Landlord

_Isadore Schall_
Isadore Schall

_Ida Schall_
Ida Schall

Tenant
FREMONT KORNERS ASSOCIATES,
An Ohio General Partnership

By _Owen Lavelle_
Owen Lavelle, General
Partner

By _Patricia Lavelle_
Patricia Lavelle, General
Partner

## INDIVIDUAL ACKNOWLEDGEMENT

State of Ohio    )
                 ) SS
Lucas County     )

Before me, a notary public in and for said county personally appeared ISADORE SCHALL and IDA SCHALL, husband and wife, landlords in the foregoing Land Lease who, being personally known to me, acknowledged they did sign the foregoing Land Lease as landlords, that the same was their voluntary act and deed for the uses and purposes therein described.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal this ___ day of June, 1977.

_____
                    Notary Public

RICHARD G. LaVALLEY, Atty at Law
Notary Public—State of Ohio
My Commission has no Expiration Date
Section 147.03 R.C.

## PARTNERSHIP ACKNOWLEDGEMENT

State of _MICH._  )
              ) SS
_WAYNE_ County)

Before me, a notary public in and for said county personally appeared OWEN LAVELLE and PATRICIA LAVELLE, husband and wife and the sole general partners in FREMONT KORNERS ASSOCIATES, an Ohio General Partnership, tenant in the foregoing land lease, personally known to me, who acknowledged that they did sign the foregoing instrument as such general partners for and on behalf of said partnership and that the same is their voluntary act and deed and the voluntary act and deed of said partnership for the uses and purposes therein expressed.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal this 9th day of June, 1977.

_Lorraine F. Deussen_
Notary Public

LORRAINE F. DEUSSEN
Notary Public, Macomb County, Mich.
My Commission Expires 11-29-80

- 25 -

## LEGAL DESCRIPTION

Being Inlots Numbers 1755, 2895, 2896, 2897, 2898, 2899, 2900 and part of Outlot Number 35 in the CITY of FREMONT, COUNTY of SANDUSKY, STATE of OHIO and being more particularly described as follows:

Beginning at an iron pipe found at the Northeast corner of Inlot Number 2895; thence, going South 26 degrees 41 minutes 20 seconds West on the East line of Inlots Numbers 2895, 2896, 2897, 2898, 2899, and 2900 a distance of 345.16 feet to an iron rod set on the Southeast corner of Inlot Number 2900; thence going North 63 degrees 13 minutes 40 seconds West on the South line of Inlots Numbers 2900, 1755, and Outlot Number 35 a distance of 435.19 feet to an iron rod set at the intersection of the South line of Outlet Number 35 and East line of a permanent easement granted to the City of Fremont for flood control purposes and recorded in Volume 297 page 239 at the Sandusky County Recorder's Office; thence, going North 27 degrees 24 minutes 00 seconds East on and along said easement a distance of 72.87 feet to an iron rod set; thence North 5 degrees 38 minutes 00 seconds East on and along said easement a distance of 249.00 feet to an iron rod set; thence South 69 degrees 53 minutes 00 seconds East on and along said easement a distance of 50.00 feet to an iron rod set; thence, North 31 degrees 12 minutes 00 seconds East on and along said easement a distance of 35.00 feet to an iron rod set on the North line of Outlot Number 35; thence, South 63 degrees 09 minutes 00 seconds East on and along the North line of Outlot Number 35 and Inlots Numbers 1755 and 2895 a distanc of 471.32 feet to the place of beginning containing 3.7227 Acres of land more or less but subject to all easements of record.

035-1-999-0040